UNDER SEAL

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No.: 1:17-mj-341 |
| ) | |
| NALETH VONGSENGCHANH, ) | |
|   a/k/a "Aleth Terada" ) | **UNDER SEAL** |
|   a/k/a "Naleth Dongsenchanh" ) | |
| ) | |
| and ) | |
| ) | |
| Oksana VOVK, ) | |
| ) | |
|   Defendants. ) | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brett Gentrup, a Special Agent with the United States Department of Homeland Security (DHS) – Homeland Security Investigations – (hereinafter known as the affiant) being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. In this regard, I am also designated with the authority to conduct investigations of Title 21 of the United States Code.

2. I am a duly sworn Special Agent (SA) of Homeland Security Investigations (HSI) – a directorate of Immigration and Customs Enforcement (ICE) – empowered under the authority of Title 19, United States Code, Section 1589a, and have been so employed by HSI, and its predecessor, the United States Customs Service, since September 2001. I am a graduate of the

1

Federal Law Enforcement Training Center, and I have received specialized training in narcotics and smuggling investigations. I have conducted transnational investigations with the goal of infiltrating cross-border criminal enterprises, including organizations engaged in narcotics distribution and smuggling. I have participated in the application for and execution of arrest and search warrants in the investigation of smuggling related offenses resulting in the prosecution and conviction of individuals and the seizure of contraband, United States currency and other evidence of criminal activity.

3. I am currently assigned to the HSI Washington, D.C. metropolitan area's High Intensity Drug Trafficking Area initiative (HIDTA). The HIDTA investigates drug and money laundering organizations that impact the Washington, D.C. metropolitan region. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, the organization of drug and other criminal conspiracies, and the methods used by criminal organizations to conceal illicit proceeds.

4. I have also discussed with experienced law enforcement officers, as well as cooperating individuals, the methods and practices used by persons involved in smuggling drugs and money laundering. Thus, I am familiar with the methods and tactics routinely used by drug smugglers and money launderers to thwart law enforcement investigations and continue their illegal enterprises. Based on my training and experience, I am familiar with methods used for money laundering, and the variety of means to effect the commissions of such crimes, which include the use of multiple bank accounts to secure and transfer funds.

5. Since this affidavit is intended to show merely that there is sufficient probable cause for the requested, I have not set forth each and every fact learned during the course of this investigation. I make this affidavit based, in part, on my personal knowledge and observations

derived from my participation in this investigation, information provided by other agents and law enforcement officers, reports and data provided by other officers which I have read and reviewed, cooperative witnesses, grand jury subpoenaed bank records, and, in part upon information and belief. Throughout this affidavit any characterizations of evidence your affiant makes concerning this investigation are based upon my training and experience in this and other narcotics investigations, and conversations with other experienced officers and agents or other law enforcement officials.

6. This affidavit contains only those facts which are necessary to establish probable cause to support the issuance of a criminal complaint against NALETH VONGSENGCHANH, also known as Aleth Terada, also known as Naleth Dongsenchanh, (hereinafter "TERADA") and OKSANA VOVK (hereinafter "VOVK") for violations of Title 21, United States Code, Sections 841(a)(1) and 846, conspiracy to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine.

## BACKGROUND

7. Your affiant is currently participating in an investigation of a drug trafficking organization that is known to illegally smuggle large amounts of cocaine from the Houston, Texas area for redistribution within the Washington, D.C. region. This organization is further known to launder illegal drug proceeds through, among other things, cash or money transfers. The investigation was initiated in or around January 2016 and is now part of an Organized Crime and Drug Enforcement Task Force (OCDETF) investigation. Several suspected or known drug traffickers of this organization have been identified, including two cooperating co-conspirators, hereinafter referred to as CC-1 and CC-2.

8. Based on information and evidence gathered in furtherance of the investigation, the investigation establishes that TERADA and VOVK were actively involved in narcotics trafficking and money laundering activities in the Eastern District of Virginia and elsewhere.

9. TERADA, a citizen of the United States, is believed to be the primary person who obtained kilogram amounts of cocaine in the Houston, Texas region and supplied the narcotics to CC-1, CC-2, and others, so that the cocaine could be redistributed for profit in the Washington, D.C. area, including the Eastern District of Virginia, and so that money (or money transfers) could be sent to him in Houston, Texas as payment for his participation and coordination of a large-scale drug trafficking conspiracy.

10. VOVK, a citizen of Russia, is the owner of STYLISH TRAVELER, LLC whose accounts were used to launder drug proceeds in furtherance of the drug trafficking conspiracy. VOVK is believed to be a co-conspirator involved in the drug trafficking conspiracy, and was present when CC-1 and CC-2 purchased kilogram amounts of cocaine from TERADA in Houston, Texas.

11. On November 4, 2016, CC-1 and CC-2 were arrested in the Eastern District of Virginia by law enforcement officers and agents assigned to the Annandale, Virginia HIDTA task force. The arrests were executed after law enforcement officers observed CC-1 and CC-2 remove approximately one kilogram of cocaine that was packaged and concealed in the engine compartment of a vehicle driven by CC-1 and occupied by VOVK. CC-1 and VOVK traveled from Houston, Texas to Vienna, Virginia, within the Eastern District of Virginia, with the kilogram of cocaine.

12. On January 3, 2017, CC-1 and CC-2 pled guilty to a single count criminal information charging each with conspiracy to distribute 500 grams or more of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

### PROBABLE CAUSE

13. CC-1 first met TERADA and VOVK in the Washington, D.C. metropolitan area circa 2014. CC-1 initially purchased personal use amounts of cocaine from TERADA, and also served as a middleman for local drug distributors when TERADA lived in the Washington, D.C. region.

14. TERADA and VOVK moved to Houston, Texas in January 2015. TERADA was able to obtain, and supplied kilogram amounts of cocaine at a time to CC-1. In February 2015, TERADA express mailed a parcel containing a kilogram amount of cocaine to a recipient in the Eastern District of Virginia. CC-1 retrieved the parcel from the recipient, kept half of the kilogram for himself, and provided the other half to local distributors in the Washington, D.C. region for sale.

15. After the cocaine was distributed, CC-1 collected $38,000.00 in drug proceeds from the local dealers and kept $1,000.00 profit for his role in the drug trafficking conspiracy. CC-1 had CC-2 drive the remaining $37,000.00 in U.S. currency in a rental vehicle to TERADA in Houston, Texas. After CC-2 delivered the drug proceeds, TERADA supplied CC-2 another kilogram of cocaine for transport and delivery to CC-1 in the Washington, D.C. region.

16. CC-2 made numerous other trips in rental vehicles to transport the drug proceeds to Houston, Texas and obtain kilogram quantities of cocaine from TERADA for transport back to the Washington, D.C. region. In May 2015, CC-1 rented a vehicle from Enterprise in Alexandria, Virginia, within the Eastern District of Virginia, and accompanied CC-2 on a trip to Houston, Texas to pick up cocaine from TERADA for delivery to the Washington, D.C.

metropolitan area. CC-1 and CC-2 drove to an apartment where both TERADA and VOVK were present. CC-1 gave TERADA bulk U.S. currency and TERADA contacted his supplier. The following day an unidentified co-conspirator (UCC) arrived at TERADA's apartment and delivered one kilogram of cocaine to TERADA, who then supplied that kilogram to CC-1.

17. CC-2 concealed the cocaine in the engine compartment of the rental vehicle. CC-2 departed Houston in the rental vehicle with the cocaine destined for CC-1's house in Maryland. Once in Maryland, CC-2 retrieved the cocaine from the engine compartment, placed it in a bag, and then drove the rental vehicle with the bag of cocaine to a location in Washington, D.C., at the direction of CC-1. CC-2 left the vehicle unlocked and walked away. The cocaine was retrieved by a local distributor, who was a customer of CC-1, and left $35,000.00 in U.S. currency inside the rental vehicle. A short time later CC-2 returned to the vehicle and drove to a Wells Fargo branch in the Eastern District of Virginia. CC-2 deposited the $35,000.00 in U.S. currency into multiple bank accounts, including accounts he believed were held, or controlled by UCC, TERADA, and VOVK. The bank account details were provided to CC-2 by CC-1, who had remained in Houston, Texas. After CC-2 deposited the cash at Wells Fargo, CC-1, TERADA, and VOVK, drove from Houston, Texas to the Washington, D.C. region with another kilogram of cocaine.

18. CC-2 made trips to Houston, Texas in June, July, September, and October of 2015 and would either take $30,000.00 or $60,000.00 in U.S. currency to purchase one or two kilograms of cocaine from TERADA and VOVK.

19. In addition to CC-1 and CC-2 transporting and delivering bulk cash currency to TERADA in Texas, CC-1 also facilitated the transfer of drug proceeds to TERADA through

traditional bank deposits and money transfers. TERADA provided CC-1 the bank account details, amounts, and/or payee information.

20. TERADA provided the bank account details to CC-1 for Capital One Bank account 1360853035 in the name of STYLISH TRAVELER LLC. According to records produced by Capital One, account 1360853035 was a jointly owned account held by TERADA and VOVK.[1] Your affiant conducted an analysis of the account activity for Capital One account 1360853035, which identified frequent in-branch counter cash deposits, many of which were conducted at bank branches in the Washington, D.C. region. Based on my training and experience, some of the cash deposits appear to have been structured to evade currency reporting requirements. CC-1 conducted the below financial transactions in order to transfer drug proceeds to TERADA in Texas through the STYLISH TRAVLER LLC account at Capital One:

| DATE | DEPOSIT AMOUNT | DEPOSIT SOURCE | BRANCH LOCATION | BRANCH ADDRESS |
|---|---|---|---|---|
| 2/10/2015 | $9,000.00 | S&T Construction[2] | N/A | N/A |
| 3/20/2015 | $5,000.00 | Cash | Falls Grove | 14943 Shady Grove Road, Rockville, MD |
| 5/11/2015 | $7,000.00 | Cash | Diamond Square | 12 Bureau Drive, Gaithersburg, MD |
| 7/3/2015 | $5,200.00 | Cash | Annandale | 7030 Little River Turnpike, Annandale, VA |
| 7/3/2015 | $2,800.00 | Cash | Annandale | 7030 Little River Turnpike, Annandale, VA |
| 7/8/2015 | $1,400.00 | Cash | Falls Grove | 14943 Shady Grove Road, Rockville, MD |
| 7/9/2015 | $1,750.00 | Cash | Arlington | 4700 Lee Highway, Arlington, VA |
| 7/17/2015 | $3,000.00 | Cash | Arlington | 4700 Lee Highway, Arlington, VA |
| 7/22/2015 | $1,500.00 | Cash | Spring Valley | 4860 Massachusetts Ave, NW Washington, DC |
| 9/8/2015 | $5,000.00 | Cash | King Farm | 802 Pleasant Drive, Rockville, MD |

---

[1] The Capital One account 1360853035 was closed on or about November 4, 2016.
[2] The source of the deposit was check #239 payable to STYLISH TRAVELER LLC. The check was drawn from an account held at Capital One and controlled by CC-1.

7

| 9/8/2015 | $3,000.00 | Cash | King Farm | 802 Pleasant Drive, Rockville, MD |
|---|---|---|---|---|
| 9/10/2015 | $3,000.00 | Cash | Falls Grove | 14943 Shady Grove Road, Rockville, MD |
| 9/11/2015 | $2,100.00 | Cash | Falls Grove | 14943 Shady Grove Road, Rockville, MD |
| 10/6/2015 | $1,550.00 | Cash | Chevy Chase Circle | 5714 Connecticut Ave, NW, Chevy Chase, MD |
| 10/22/2015 | $5,000.00 | Cash | King Farm | 802 Pleasant Drive, Rockville, MD |
| 10/22/2015 | $4,600.00 | Cash | Falls Grove | 14943 Shady Grove Road, Rockville, MD |
| 10/22/2015 | $4,400.00 | Cash | Falls Grove | 14943 Shady Grove Road, Rockville, MD |
| 11/2/2015 | $3,000.00 | Cash | Cordell Avenue | 4825 Cordell Ave, Bethesda, MD |
| 11/30/2015 | $2,000.00 | Cash | Muddy Branch | 812 Muddy Branch Road, Gaithersburg, MD |
| 12/4/2015 | $4,000.00 | Cash | King Farm | 802 Pleasant Drive, Rockville, MD |
| 12/4/2015 | $2,000.00 | Cash | Shady Grove | 16827 Crabbs Branch Way, Rockville, MD |
| 12/9/2015 | $2,000.00 | Cash | Gaithersburg | 509 N. Frederick Ave., Gaithersburg, MD |

Based on your affiant's analysis of the bank records, the cash deposits listed in the above table were followed by cash withdrawals by account holders TERADA and VOVK. Frequently, the withdrawals were made in similar amounts and on the same day, or following business day, as the cash deposits. Based on my training and experience, some of the withdrawals appeared structured to evade bank reporting requirements. Your affiant reviewed the corresponding Capital One bank supporting documents for the cash withdrawals. Based on this review, your affiant determined that each withdrawal slip was completed manually and included information such as, date, account number, name, and transaction amount. The name printed on each slip was either "Stylish Traveler LLC," "Aleth Terada," or "Oksana Vovk," and each slip contained a signature authorizing the withdrawal and acknowledging receipt of the transaction amounts. The

signature provided on withdrawal slips appeared to resemble the signatures of TERADA and VOVK provided on the Capital One account information form.

| DATE | WITHDRAWAL AMOUNT | WITHDRAWN BY |
|---|---|---|
| 2/10/2015 | $4,500.00 | TERADA |
| 2/11/2015 | $4,500.00 | VOVK |
| 3/20/2015 | $5,000.00 | TERADA |
| 5/11/2015 | $6,000.00 | TERADA |
| 7/3/2015 | $7,500.00 | TERADA |
| 7/20/2015 | $3,000.00 | TERADA |
| 8/27/2015 | $4,140.00 | VOVK |
| 9/8/2015 | $8,000.00 | TERADA |
| 10/22/2015 | $8,000.00 | VOVK |
| 10/23/2015 | $4,500.00 | VOVK |
| 12/3/2015 | $1,000.00 | TERADA |
| 12/8/2015 | $5,000.00 | TERADA |
| 12/9/2015 | $800.00 | VOVK |

21. Based on my knowledge and experience, it appears the primary purpose of the Capital One account was to facilitate the interstate movement of cash through a commercial account. The transaction activity is consistent with the laundering of proceeds derived from illicit activity such as drug trafficking. TERADA instructed CC-1 to deposit cash anonymously into branches located in the District of Columbia, Maryland, and the Eastern District of Virginia. TERADA and VOVK then withdrew the money to use in furtherance of the criminal enterprise. This movement of illegal proceeds through the use of bank accounts, which can be accessed at branches in several states, constitutes money laundering.

22. On October 9, 2015, CC-2 was stopped by Louisiana law enforcement for a traffic violation. A consent search of the vehicle revealed approximately one kilogram of cocaine in the air filter inside the engine compartment of the rental vehicle CC-2 was driving. CC-2 was

traveling with the kilogram of cocaine from Texas back to the Washington, D.C. region on behalf of CC-1.

23. In November 2016, CC-1 traveled by plane to Houston to meet VOVK and buy a kilogram of cocaine from UCC, since TERADA was incarcerated in Arlington, Virginia. CC-1 also assisted VOVK with transporting her, and some personal belongings, to Virginia while TERADA was serving his jail sentence. On November 4, 2016, CC-1 and CC-2 were arrested in the Eastern District of Virginia, after retrieving the kilogram of cocaine from the engine block of the rental vehicle CC-1 was driving, as described *supra* ¶11.

## CONCLUSION

24. Based on the foregoing facts, there is probable cause to believe that from February 2015 to on or about November 4, 2016, in the Eastern District of Virginia and elsewhere, TERADA and VOVK knowingly, unlawfully, and intentionally combined, conspired, confederated, and agreed with others, both known and unknown, to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.

_____
Brett Gentrup
Special Agent
Homeland Security Investigations

Subscribed to and sworn before
me this 21st day of Jul, 2017.

_____/s/_____ JFA
John F. Anderson
The Honorable John F. Anderson
United States Magistrate Judge

10